## BLYTHE *v.* SIMMONS *et al.*

[65 South. 571.]

1. EQUITY. *Decree. Conformity to pleadings. Bill.*

Where complainants filed a bill in chancery against defendant and a bank, in which it was alleged that defendant had procured complainant to execute their notes by fraud and had negotiated them to the bank, which took with notice, and which had brought suit. thereon, and the relief prayed for was to restrain the suits on the notes and for their surrender; and that defendant be decreed primarily liable to the bank and that the bank's remedy against him be first exhausted, and that complainants might have a decree over against defendant for any amount for which they were adjudged liable, and generally for other relief, in such case there being no showing that complainant had been compelled to pay anything on the notes, or had yet been otherwise damaged by their execution, a decree requiring defendant to pay complainant the amount of the notes, was improper as not within the prayer for relief nor supported by the allegations of the bill.

2. EQUITY. *Pleading. Bill.*

Only such decree can be entered as is supported by the allegations of the bill.

3. FRAUD. *Damages. Evidence. Sufficiency.*

Where a defendant fraudulently induced complainants to execute notes which were negotiated to a bank, the fact that complainant adjusted their difference with the bank, which was suing on the notes, will not entitle complainant to recover the full amount of the notes from the defendant, where it did not appear how the settlement was made or what amount was paid the bank pursuant thereto.

APPEAL from the chancery court of Newton county.

HON. SAM WHITMAN, JR., Chancellor.

Bill by J. M. Simmons and others against J. E. Blythe and others. From a decree of complainants, defendant Blythe appeals.

The facts are fully stated in the opinion of the court.

*J. A. Cunningham* and *Anderson & Long,* for appellant.

The position taken by counsel for appellees in their brief that where chancery court takes jurisdiction, the court may grant different relief from that specifically prayed for under the prayer for general relief, has its limitation, and we quote this from *Learned* v. *Holmes,* 49 Miss. 290, cited and relied upon by them, viz.: While it is quite true that equity jurisdiction once acquired, will be retained for all the purposes of the bill, including in a proper case, an adjustment of damages, yet it must be borne in mind that the jurisdiction for compensation or damages does not attach in equity, except as an incident or auxilliary to some other relief (*Scott* v. *Bilgerry,* 40 Miss. 119; 2 Story Eq. Jur., secs. 794 to 799; Willard's Eq. Jur., 309), nor where there is an adequate remedy at law, does fraud confer it. In most misrepresentations and frauds, there is an adequate remedy in damages at law. In such cases equity will not interfere, and of this class is the case at bar. These familiar rules will be completed by repeating their converse, that fraud will give this jurisdiction in cases where there is no adequate remedy at law." See citations thereunder by the court.

Counsel very adroitly pass around this other limitation, which we think certainly bars their rights under the rule relied upon by them. This limitation is that the relief so granted must be entirely consistent with the pleadings, and so that it shall not be a surprise to the defendants. This is announced in the case of *Bell* v. *Clark et al.,* 14 So. 318, from which we quote the following in point, to wit: It was formerly the rule in equity that no relief could be granted under the general prayer which was inconsistent with that specially prayed. *Wymouth* v. *Boyer,* 1 Ves. Jr. 416; *Palk* v. *Lord Clinton,* 12 Ves. 48; *Walpole* v. *Lord Orford,* 3 Ves. 402; *Grimes* v. *French,* 2 Atl. 141; *Kernegay* v. *Carroway,* 2 Dev. Eq. 403.

In modern practice, the rule is more liberal, and under the general prayer any relief consistent with the bill, and within its scope, may be afforded, though it be inconsistent with the specified relief prayed. *Dodge* v. *Evans*, 43 Miss. 570; *Mhoon* v. *Wilkerson*, 47 Miss. 634. But relief must yet be such as can be afforded on the facts stated, and it must appear that the defendant is fairly apprised by the bill that the relief is sought by the complainant. *Weeks* v. *Thrasher*, 52 Miss. 142. Mrs. Dozier is entitled to no relief, and the only relief which could be afforded to Clark, Hood & Company, against the defendant, would be incidental to that afforded them as against Mrs. Dozier, the mortgagor. But she is a complainant with them, and not a defendant against whom any relief is prayed.

"If the bill, as stated, should be taken as confessed against the defendant, it is evident that no proper decree granting relief could be entered. Under such circumstances, a demurrer should be sustained. Decree reversed, demurrer sustained, and bill dismissed."

Can it possibly be considered consistent with the amended bill in this cause to ask such a personal decree against appellant? Nowhere do they aver that they have been out one cent. Furthermore, they aver the contrary (see amendment to bill Tr., page 22), that this bank is a purchaser with full knowledge of all the fraud with which they aver the notes to be tained, and add the averment that they have a perfect defense to the notes.

This bill, therefore, taken as amended, does not only fail to allege anything which entitles them to the relief granted, but under the above quoted authority, positively placed a spanless gulf between them and the relief which they obtained in the court below, and which they endeavor to sustain in this court.

What if, as alleged in their brief, they did afterward pay off these notes—this, which they still aver in their

bill, to be worthless paper? They did not amend and afford defendants the information that they had decided it to be a valid obligation, or had been forced to pay these notes to their damage in certain sums, etc. This was their duty in order to put defendants on guard of the "bout-face," "back-to-face," turn things were taking behind the pleadings. Appellant could then have taken issue, if he chose, and could have shown what small damage had been sustained, if any, or perhaps that none had been.

We have examined the authorities and find the position of appellees in their brief on this proposition overwhelmed with authority to the contrary, and we cite 20 Cyc., page 130, from which we quote the following paragraph, viz.: "The general rule of damages in cases of fraud is that the party defrauded is entitled to recover the amount of the loss caused by the fraud of the other party, or, as it has been expressed, plaintiff is entitled to recover damages adequate to the injury which he has sustained. Plaintiff can recover the entire amount of his loss occasioned by the fraud, but the recovery must be limited to the actual loss, sustained by reason of the fraud. The expense incurred by plaintiff on account of the false representations may be the proper measure of damages to be recovered." (We direct the attention of the court to the copious citation of authorities thereunder.)

*Jesse D. Jones, Flowers, Alexander & Brown,* for appellees.

The first inquiry propounded in the letter by the clerk of the supreme court to counsel in this case, voicing the request of the supreme court, is: First, is the bill framed so as to support the decree for the payment of money by Lothrope to appellees? This question is answered by us in the affirmative. The original bill was filed in 1909. The decree of the chancery court was

rendered toward the close of 1911. When the bill was filed the suits in the circuit court instituted by the Bank of Newton were pending. Between the time when the chancery suit was instituted and the time when the final decree of the chancery court was rendered, many things happened, among which was the compulsory payment of appellees of the notes as shown in the final decree. Had the notes been paid when the bill was prepared, the bill would so have recited. And the fact that the notes were paid before the final decree authorized the chancellor to render the decree which should cover all matters consequent and germane to the allegations of the bill.

The bill, as framed, distinctly recited that Lothrope and Blythe were partners in the skin game; that within the scope of such partnership, Lothrope fraudulently deceived appellees into signing notes payable to bearer; that such notes, when due, were presented for payment and were protested; and that the supereme court had decided that the appellees were liable to the Newton Bank, innocent holder of the notes, and that unless the court of chancery should intervene, the appellees would be compelled to pay the judgment which would be rendered against them in the circuit court on the notes. The bill recites that Blythe and Lothrope should be compelled "to pay the said notes and to pay any judgment which might be rendered against these complainants." The bill further recited that the chancery court "can enter decree against those against whom liability should be enforced."

Accordingly, answering the question propounded by this appellate court as to whether the bill was framed so as to support the decree for Blythe and Lothrope to be adjudged liable to appellees, we say that the foregoing statement upholds our view; and, as shown on page 8 of the record, the original bill near its close, prays that Blythe and Lothrope be adjudged primarily liable to the

Bank of Newton on said notes, and if decree should be rendered against complainants in favor of the bank, then that complainants should have their decree against Blythe and Lothrope; and that proper decree be rendered as should appear to be necessary to the chancery court in order that justice might be done. In addition, the bill prayed for general relief.

That the chancery court will have jurisdiction to support the decree for the payment of money by Blythe and Lothrope to appellees under the above quotations from our bill is upheld by the following decisions: *Learned* v. *Holmes*, 49 Miss. 290; *R. R. Co.* v. *Brooks*, 66 Miss. 583; *Lumber Yard* v. *R. R. Co.*, 96 Miss. 116; *Craig* v. *Dougherty*, 61 Miss. 96; and see section 39 under heading of "Equity," Bobbs-Merril Digest.

Opposing counsel assert in their brief that the bill does not show that appellees were damaged by the fraud. We think the bill will easily show fraud and resulting damage. Lothrope is shown to have approached the complainant with a proposition which is distinctly shown not to have been made with good faith. The bill shows that the defendant partnership extended a supposedly valid contract, consideration for which was the execution of the notes; said contract limiting territory to the fortunate holder of the contract and two others; and that such contract was not carried through by defendants.

On the second proposition: If the bill is so framed, are appellees entitled to recover of appellant, if at all, anything more than the money which they have been compelled to pay on the notes executed by them? Our answer to this is that the liability of Blythe and Lothrope extends, not only to the money which appellees have actually paid, but also to what they are in law under obligation to pay. In other words, if they are obligated (under the supreme court decision in the Newton Bank's suit) to pay to the bank the notes, then

the question whether they may have a portion or the whole is immaterial, since the original bill of complaint in this chancery suit prayed that Blythe and Lothrope should be bound and required to pay to the bank what the appellees should be required to pay. The answer to the honorable court's question, in our opinion, should be: The appellees are entitled to recover the money they have been compelled to pay and also what they have become bound to pay, whether appellees have actually paid the same or not; since the obligation to pay a future debt is an obligation just as certain as the actual present obligation to pay now or the obligation to pay a past-due debt. The court of chancery, in awarding full, adequate and complete relief, will not stand idly by and wait until appellees have actually had to pay, at some time in the future, the obligation on the notes to the bank, but will come at once to the relief of the appellees.

SMITH, C. J., delivered the opinion of the court.

Appellees filed their bill in the court below against C. S. Lothrope, J. E. Blythe, and the Bank of Newton, alleging that they had been induced by fraud to execute to C. S. Lothrope & Co., a partnership composed of C. S. Lothrope and J. E. Blythe, several promissory notes, which notes were afterwards purchased by the Bank of Newton; that this bank had instituted several suits thereon against appellees, which suits were then pending in the circuit court of Newton county; and by an amendment to the bill it was alleged "that the Bank of Newton had notice of the fraudulent character of the contracts of which the said notes were parts." The bill prayed that the bank of Newton be joined from prosecuting its suits at law on the notes, and that on final hearing—

"the Bank of Newton be required to deliver up to these complainants their said notes, and that the Bank of Newton be required to take its decrees against the said J. E.

Blythe, as well as against these complainants, and exhaust its remedy against the said Blythe before proceeding further against these complainants; that the said J. E. Blythe and the said C. S. Lothrope be adjudged and decreed to be primarily liable to the said Bank of Newton for the amount paid by the said bank for the said notes, and, if decree should be entered against these complainants in favor of said Bank of Newton, they have their decrees against the said J. E. Blythe and C. S. Lothrope, or either of them; that the said causes be taken up by this court and dealt with by this court and decree or decrees entered in such manner as to this court may seem necessary in order that justice may be done and that liability may be fixed upon the party or parties that should bear it. Complainants pray that, if they are mistaken in the relief herein asked for, they be granted such other further special or general relief as the case requires or as in equity they are entitled to. As in duty bound they will ever pray. Answer under oath is waived."

The decree entered on final hearing is not only not in accordance with the prayer of the bill, but is not supported by any of the allegations thereof. By it the bill was dismissed in so far as it sought relief against the Bank of Newton, and appellant was directed to pay to appellants the amounts of the various notes executed by them, together with interest thereon.

Appellant can only be called upon to make good to appellees the amount of any damage suffered by them by reason of the execution of these notes, conceding that their execution was induced by fraud. The bill contains no allegation that the notes have been paid either in whole or in part, or that appellees have been otherwise damaged by reason of the execution thereof, but, on the contrary, alleges that the notes have not been paid and that suits are now pending by which payment thereof is sought to be coerced. Under this decree, appellees may

collect from appellant the full amount of the notes though they themselves may never pay them.

It is true that it appears from the evidence that appellees have adjusted their differences with the Bank of Newton, but this fact did not warrant the court in entering the decree: First, because only such a decree can be entered as is supported by the allegations of the bill; and, second, because, while the evidence discloses an adjustment with the bank, it does not disclose how the adjustment was made or what amount, if any, appellees paid the bank pursuant thereto.

*Reversed and remanded.*